UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DLJ MORTGAGE CAPITAL, INC.,<br><br>    Plaintiff<br><br>v.<br><br>FIDELITY NATIONAL TITLE GROUP, INC., et al.,<br><br>    Defendants | Case No.: 2:20-cv-02251-APG-DJA<br><br>**Order Granting Motion to Remand and Denying Motion for Attorneys' Fees**<br><br>[ECF Nos. 10, 11] |

Defendant Chicago Title Insurance Company (Chicago Title) removed this case to this court before any defendant was served with process. Plaintiff DLJ Mortgage Capital, Inc. (DLJ) moves to remand the case to state court, claiming that removal is barred by the forum defendant rule of 28 U.S.C. § 1441(b)(2). The issue presented is whether a non-forum defendant may remove a case before any defendant was served when one of the defendants is a citizen of the forum state. Because removal of this case was premature, I grant the motion and remand the case. I deny DLJ's motion for attorneys' fees.

**PROCEDURAL POSTURE**

DLJ filed this action in state court on December 10, 2020. DLJ sued Fidelity National Title Group, Inc., Chicago Title, Chicago Title Agency of Nevada (Chicago Nevada), and various Doe Defendants. Chicago Nevada is the only defendant that is a Nevada entity. ECF No. 1 at 2.

On a Sunday three days after the complaint was filed, Chicago Title removed the case to this court. None of the defendants had been served when the case was removed. This tactic of removing a diversity case before a forum defendant has been served is termed a "snap removal."

The goal is to avoid the bar against removal that exists when any defendant "properly joined and served" is a forum defendant. 28 U.S.C. § 1441(b)(2). DLJ now moves to remand, arguing that removal was improper because Chicago Nevada is a forum defendant and Chicago Title's snap removal violated § 1441(b)(2). Chicago Title responds that Chicago Nevada is a sham defendant that must be ignored for diversity purposes, and the fact it had not been served does not preclude removal.

**ANALYSIS**

"Federal courts are courts of limited jurisdiction. . . . It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773–74 (9th Cir. 2017) (internal quotations and citation omitted). This burden on a removing defendant is especially heavy because "[t]he removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Id.* (citations omitted); *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

**A.  Chicago Nevada is not a sham defendant.**

The forum defendant rule bars removal based on diversity jurisdiction "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). Chicago Nevada is a forum defendant. Chicago Title argues I should ignore Chicago Nevada for removal purposes because it is a sham defendant named solely to invoke the forum defendant rule. Chicago Title contends that the sole basis for this suit is DLJ's attempt to recover under a title insurance policy issued by Chicago

Title. *See* ECF No. 1 at 2. Chicago Nevada is an agent, not an insurer, and thus has no contractual or legal obligation to indemnify DLJ under that policy. DLJ responds that it is asserting claims and allegations against Chicago Nevada that go beyond the policy.

"[U]nder the fraudulent-joinder doctrine, joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Weeping Hollow Ave. Tr. v. Spencer*, 831 F.3d 1110, 1113 (9th Cir. 2016) (internal quotation marks and alterations omitted). "Fraudulent joinder must be proven by clear and convincing evidence." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).

DLJ's complaint asserts potentially valid claims against Chicago Nevada. It alleges that DLJ's predecessor entered into a contract with Chicago Nevada to obtain a title policy, and that Chicago Nevada represented that the policy would cover losses ultimately caused by the lien that gave rise to this dispute. ECF No. 1-1 ¶¶ 69-74, 79, 125-130, 146; *see also id.* ¶ 71 ("Chicago Nevada agreed to undertaking the obligation of procuring, issuing, and/or providing coverage that insured the Lender's Deed of Trust was in superior position over the HOA's lien."); *id.* ¶ 81 (the defendants, including Chicago Nevada, represented to DLJ's predecessor "that the HOA's CC&Rs contained a mortgage savings clause"); *id.* ¶ 157 (Chicago Nevada "issued the Policy with the belief that it would provide coverage if the Deed of Trust was impaired or extinguished by the enforcement of the HOA's lien."); *id.* ¶ 173 (additional alleged misrepresentations by Chicago Nevada); *id.* at 33 (Chicago Nevada counter-signed the Policy). Among other claims,

DLJ brings a deceptive trade practices claim against Chicago Nevada for "knowingly misrepresenting" the coverage its predecessor negotiated for. *Id.* ¶¶ 166-179.[1]

While these claims and allegations may not be pleaded as clearly as possible, Chicago Title has not shown by clear and convincing evidence that they obviously fail to assert claims against Chicago Nevada under Nevada law.[2] Chicago Title focuses on the obligations under the title policy, but it ignores DLJ's non-contractual claims and allegations regarding Chicago Nevada's alleged misrepresentations and violations of Nevada's deceptive trade practices statutes. Chicago Nevada is therefore not a sham defendant. Because it is a forum defendant, § 1441(b)(2) applies here.

**B. Chicago Title's snap removal was improper under 28 U.S.C. § 1441(b)(2).**

Chicago Title also argues that even if Chicago Nevada is a legitimate defendant, it had not been served at the time of removal. Thus, Chicago Title contends that § 1441(b)(2) is not a bar to removal because Chicago Nevada had not been "properly joined and served" as required under the statute. DLJ responds that snap removals like this violate the purpose of § 1441(b)(2), which is to preserve a plaintiff's choice of a state court forum by suing a proper forum defendant. The question is thus whether a non-forum defendant is permitted to remove a diversity case before any defendants have been served.

The plain language of § 1441(b)(2) does not answer the question, as evidenced by the number of courts reaching different conclusions on whether snap removal is permitted under the

---

[1] DLJ also alleges that Chicago Nevada is liable as the alter ego of Chicago Title. Because DLJ alleges other viable claims against Chicago Nevada, I need not address whether the alter ego allegation is viable under Nevada law.

[2] To the extent Chicago Title argues that DLJ's claims against Chicago Nevada are barred by the statute of limitations or other defenses, those arguments are properly raised in the Nevada state court. At this point, it is not clear that those defenses would obviously be successful.

statute. *See Gentile v. Biogen Idec, Inc.*, 934 F. Supp. 2d 313, 317-18 (D. Mass. 2013) (collecting cases). "The question has deeply divided district courts across the country." *Id*. at 315.

In *Gentile*, Judge Woodlock held that § 1441(b)(2)'s plain language prohibits snap removal because it assumes that at least one defendant has been served before removal. *Id*. Judge Woodlock was interpreting the prior version of § 1441(b)(2), which was applicable to the facts of that case. That version stated that an action founded on diversity of citizenship "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."[3] In the phrase "none of the parties in interest properly joined and served," the word "none" functions as a pronoun and means "not any." *Id.* at 318.

> "Any," in turn, means "one or more indiscriminately from all those of a kind." . . . Inherent in the definition is some number of the "kind" from which the "one or more" can be drawn. Accordingly, the use of "none" and definite article "the" when referring to "parties" assumes that there is one or more party in interest that has been properly joined and served already at the time of removal, among which may or may not be a forum-state defendant. Thus, section 1441(b) conditioned removal on *some* defendant having been served.

*Id*. (internal citation omitted). Judge Woodlock notes that the current version of the statute—"any of the parties" instead of "none of the parties"—has the same meaning. "[T]he statute assumes at least one party has been served; ignoring that assumption would render a court's analysis under the exception nonsensical and the statute's use of 'any' superfluous." *Id*. Thus, a "basic assumption embedded in the statute [is] that a party in interest had been served prior to removal . . . ." *Id.* This interpretation precludes snap removals.

---

[3] The statute was amended in 2011 to its present language. Judge Woodlock found that "the amendments did not materially change the relevant language of the statute." *Gentile*, 934 F. Supp. 2d at 316 n.2.

While this interpretation is not the only one possible, I agree it is the most cogent.[4] Reasonable jurists have interpreted this statute differently, and the fact that "[d]istrict courts are in disarray on the question"[5] confirms that the statute's language is ambiguous. I thus "look to 'canons of construction, legislative history, and the statute's overall purpose to illuminate Congress's intent.'" *Moran v. Screening Pros, LLC*, 943 F.3d 1175, 1183 (9th Cir. 2019) (quoting *Jonah R. v. Carmona*, 446 F.3d 1000, 1005 (9th Cir. 2006)).

To confirm the validity of his interpretation, Judge Woodlock examined the history of the removal doctrine and the "properly joined and served" language. *Gentile*, 934 F. Supp. 2d at 319-21. "The removal power, and by extension the forum defendant rule, is founded on the basic premise behind diversity jurisdiction itself, [which] was designed to protect non-forum litigants from possible state court bias in favor of forum-state litigants." *Id.* at 319. Forum defendants presumably do not need that protection from local bias, so § 1441(b)(2) protects the plaintiff's choice of a state court forum where a forum defendant is a proper party to the case. *Id.*

There is scant legislative history to help interpret the phrase "properly joined and served." *Id*. But it seems clear from relevant caselaw that the purpose "was to prevent plaintiffs from defeating removal through improper joinder of a forum defendant; incomplete service appears to have been included as a means of identifying and policing such abuse by proxy." *Id.* at 319-20. The goal was to thwart gamesmanship by plaintiffs who joined forum defendants with no intent of ever serving them.

Snap removal, on the other hand, allows gamesmanship by defendants who are sophisticated and have sufficient resources (or suspicion of impending litigation) to monitor

---

[4] My colleague Judge Mahan agrees. *See Carrington Mort. Servs., LLC v. Ticor Title of Nev., Inc.*, No. 20-cv-00699-JCM-NJK, 2020 WL 3892786 at *3 (D. Nev. July 10, 2020).

[5] 934 F. Supp. 2d at 316.

court filings and immediately remove a case before a forum defendant can be served. This practice has become more prevalent with the advent of modern technology that allows near-real-time monitoring of dockets across the country.[6] Congress would not have wanted to stop gamesmanship by plaintiffs by allowing gamesmanship by defendants.

The purposes underlying § 1441(b)(2) are better served by disallowing removal before any defendant is served. The plaintiff can preserve its ability to remain in state court by serving the forum defendant first and without delay. The non-forum defendant may still argue that the forum defendant is a sham who should be disregarded for purposes of removal. *See Gentile*, 934 F. Supp. 2d at 322-23. And this interpretation is consistent with § 1441(b)(2)'s plain language. *Id.* at 323.

Here, Chicago Title's removal was premature because no defendant had been served. As a result, I must remand the case to state court. I deny DLJ's motion for attorneys' fees because, while removal was improper, it was not frivolous or objectively unreasonable. *Patel v. Del Taco, Inc.*, 446 F.3d 996, 999 (9th Cir. 2006).

**CONCLUSION**

I THEREFORE ORDER that DLJ's motion to remand **(ECF No. 10) is granted** and its motion for attorneys' fees **(ECF No. 11) is denied**. This case is remanded to the state court from which it was removed for all further proceedings. The Clerk of the Court is instructed to close this case.

DATED this 20th day of July, 2021.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[6] Notably, here Chicago Title removed the case three days after it was filed in state court, on a Sunday.